UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-cv-147-RJC

| CHESTER LAMBERT LILLEY, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| PHILLIP REDMOND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a motion for summary judgment by Defendant Lycrecia Wiggins.[1] (Doc. No. 11). Also before the Court is a motion by Plaintiff for extension of time "to secure legal counsel." (Doc. No. 16).

**I.  BACKGROUND**

    A.  <u>Procedural Background</u>

In this action brought pursuant to 42 U.S.C. § 1983, pro se Plaintiff Chester Lambert Lilley, Jr. ("Plaintiff" or "Lilley") alleges that Defendant Lycrecia Wiggins ("Defendant" or "Wiggins") was deliberately indifferent to a serious medical condition Plaintiff suffered during his incarceration at the Iredell County Jail ("Jail") from July 11, 2009, through October 29, 2009. Plaintiff filed his Complaint on October 4, 2010. Defendant Wiggins filed her motion for summary judgment on June 27, 2011. (Doc. No. 11). On March 2, 2012, this Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff that he had 14 days to respond to the summary judgment motion. (Doc. No. 14). On March 19, 2012,

---

[1] Plaintiff also sued additional Defendants, but by Order dated December 1, 2010, Plaintiff's Complaint was dismissed as to those Defendants. (Doc. No. 4). Thus, Defendant Wiggins is the only remaining Defendant in this case.

Plaintiff filed a motion for extension of time, (Doc. No. 16), and a "response" to the summary judgment motion, (Doc. No. 15), seeking 90 days in which to find legal counsel.

The Court notes that Defendant filed her motion for summary judgment on June 27, 2011, and the motion has been pending since that time. Plaintiff, therefore, has had ample time in which to secure legal counsel in order to respond to Defendant's summary judgment motion. The Court will, therefore, deny Plaintiff's motion for an extension of time in which to secure legal counsel, and the Court will adjudicate the pending summary judgment motion at this time.

B.  Factual Background

Defendant Wiggins, a licensed practical nurse, provided healthcare to inmates at the Jail during Plaintiff's relevant incarceration. (Doc. No. 13: Wiggins Aff. at ¶ 3). When Plaintiff was booked at the Jail on July 11, 2009, Janeen Navey, R.N., evaluated Plaintiff. At that time, Plaintiff reported having two previous back surgeries, and he further indicated that he was regularly taking numerous prescription medications. (Id. at ¶ 5; Doc. No. 13-1). Plaintiff indicated that his medications were being kept at the Fifth Street Shelter in Statesville, North Carolina. Accordingly, Nurse Navey sent a Jail officer to retrieve the medications. (Doc. Nos. 13 at ¶ 6; 13-2). The following day, July 12, 2009, Wiggins evaluated Plaintiff. She reviewed his medications and spoke to Dr. Laurie Bumgarner, a doctor who came to the Jail once a week to provide care to inmates, and who was otherwise available for consultation by telephone. (Doc. No. 13 at ¶¶ 3, 7).

Dr. Bumgarner entered a voice order for Plaintiff to be administered the medications with which he had been compliant: Ultram, Wellbutrin, Colace, and Baclofen. (Doc. Nos. 13 at ¶ 7; 13-3). During Wiggins' evaluation, Plaintiff complained of difficulty going from lying down to sitting. (Doc. No. 13 at ¶ 7). Wiggins entered in Plaintiff's chart that he presented as someone

who "cannot hardly move at all and is under a disability." (Doc. Nos. 13 at ¶ 7; 13- 2).

On July 13, 2009, Wiggins submitted a "Sick Call Slip." In order for any inmate to request evaluation by a healthcare provider at the Jail, the inmate must submit a Sick Call Slip. (Doc. No. 13 at ¶ 8). Plaintiff was repeatedly counseled on the need to submit a Sick Call Slip in order to be seen by a healthcare provider. (Id. at ¶¶ 16, 21, 22). During the relevant incarceration, however, Wiggins only submitted two Sick Call Slips – one on July 13, 2009, and one on October 8, 2009. (Id.; Doc. Nos. 13-4; 13-7).

Wiggins evaluated Plaintiff on July 13, 2009, the same day he submitted his first Sick Call Slip. In response to Plaintiff's request to be seen by New River Mental Health, Wiggins contacted the facility and informed them that Plaintiff was at the Jail. (Doc. No. 13 at ¶ 9). Wiggins was unable to respond to Plaintiff's request for reading glasses, as glasses are not provided by the Jail medical staff. (Id.). In response to Wiggins' request to be seen by a neurologist, Wiggins obtained Plaintiff's medical records from Carolina Neurosurgery and Spine Associates. (Id.). The records obtained by Wiggins demonstrate that Plaintiff has an extensive history of lower back pain, with three surgical procedures (a central disc herniation at L3-4, a posterior lumbar interbody fusion at L3-4 and L4-5, and an anterior cervical discectomy infusion at C6-7). (Id. at ¶ 10). Per the records obtained by Wiggins, Plaintiff's last appointment at Carolina Neurosurgery and Spine Associates was on January 6, 2009, approximately 6 months before Plaintiff's incarceration, and no follow-up care or additional treatment was recommended or scheduled. (Id.). Wiggins followed up with a phone call to Carolina Neurosurgery and Spine Associates on July 22, 2009, and confirmed that no additional treatment was scheduled. (Id. at ¶ 12).

Dr. Bumgarner reviewed Plaintiff's chart on both July 16 and July 23, 2009. (Id. at ¶¶

3

11, 13; Doc. Nos. 13-2; 13-3). Norman Murphy, LPN performed a history and physical on July 16, 2009. (Doc. Nos. 13 at ¶ 15; 13-6). No new problems or issues were noted. (Id.). Dr. Bumgarner noted that Plaintiff had failed back syndrome and neuropathy, and had undergone surgery, but was released with no follow-up. (Doc. Nos. 13 at ¶ 16; 13-2). Dr. Bumgarner specifically instructed Plaintiff on how to submit a Sick Call Slip if he wanted to be evaluated by a healthcare provider. (Id.).

On October 8, 200; , Plaintiff submitted his second and last Sick Call Slip, providing, among other things, that he needed a "very costly operation." (Doc. Nos. 13 at ¶ 18; 13-7). Paula Hogan, LPN, evaluated Plaintiff in response to his Sick Call Slip on October 9, 2009. (Doc. Nos. 13 at ¶ 19; 13-8). Dr. Bumgarner also evaluated Plaintiff on October 8, 2009, but no new orders were given. (Doc. Nos. 13 at ¶ 21; 13-2).

On October 15, 2009, Dr. Bumgarner performed an extensive evaluation of Plaintiff. Dr. Bumgarner's Progress Notes from this evaluation indicate that Plaintiff was complaining of pain and demanding neck and shoulder surgery and tumor removal. (Doc. Nos. 13 at ¶ 22; 13-2). In response, Dr. Bumgarner informed Plaintiff that the records from Carolina Neurosurgery and Spine Associates indicated that no further surgery was scheduled, and further informed Plaintiff that while further intervention may be needed, she needed additional information from Plaintiff beyond speculation. (Id.). Plaintiff then got angry and frustrated and had to be escorted back to his cell. (Id.). Dr. Bumgarner noted concerns regarding immobilization, atrophy, and contractures, and suggested considering further evaluation, physical therapy, strength training, or transfer for safe keeping. (Id.).

Dr. Bumgarner again evaluated Plaintiff on October 29, 2009, as a result of which, Plaintiff was transferred to Central Prison. (Id. at ¶ 23). In speaking with Dr. Mineiro at Central

Prison, Dr. Bumgarner indicated that she suspected Plaintiff was embellishing and presenting his opinions and fears and stating them as fact, but questioned Plaintiff's need for further surgery or physical therapy. (Id.). Central Prison accepted Plaintiff for transfer. (Id.).

Wiggins states in her affidavit that she treated Plaintiff at all times with her best judgment; that as a nurse she is not competent to determine whether surgery is needed; and that she also is not in a position to determine whether an inmate should be sent to Central Prison or otherwise evaluated by an outside health care provider. (Id. at ¶ 24).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The

nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmovingq party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

Plaintiff brings a claim of deliberate indifference to a serious medical need. Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.[2] Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

---

[2] As a pretrial detainee, Plaintiff could pursue his medical claim under the Fourteenth Amendment, but the inquiry is the same as those for convicted prisoners' claims brought under the Eighth Amendment.

Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to a certain type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Here, Plaintiff failed to produce any evidence establishing deliberate indifference by Wiggins. Throughout Plaintiff's incarceration, he was regularly seen by prison medical staff. Wiggins had only three interactions with Plaintiff. On July 12, 2009, the day after Plaintiff's booking, Wiggins reviewed Plaintiff's medications and consulted with Dr. Bumgarner for an order to be given to administer those medications. (Doc. Nos. 13: Wiggins Aff. at ¶ 7; 13-2).

Wiggins then saw Plaintiff the next day, in response to his Sick Call Slip. Wiggins appropriately responded by obtaining Plaintiff's medical records from Carolina Neurosurgery and Spine Associates, which indicated that no further treatment was scheduled. (Doc. No. 13 at ¶¶ 9-10). Wiggins's last interaction with Plaintiff came on October 4, 2009, after Plaintiff inquired as to why Plaintiff's attorney had not been contacted to have Plaintiff released from prison due to his medical condition. In response to his inquiry, Wiggins informed Plaintiff that the Jail's medical staff does not make decisions to release inmates, including for medical reasons. (Id. at ¶ 17). There is no evidence in the record establishing that Wiggins failed to respond to Plaintiff's medical needs or responded in such a way that could have demonstrated deliberate indifference.

Further, Plaintiff was regularly followed by Dr. Bumgarner. Dr. Bumgarner evaluated Plaintiff or reviewed his chart on six occasions: on July 16, July 23, August 13, October 8, October 15, and October 29. (Id. at ¶¶ 11, 13, 16, 21, 22, 23). Dr. Bumgarner was aware of Plaintiff's history of back pain, reviewed Plaintiff's medical records from Carolina Neurosurgery and Spine Associates, and carefully considered the appropriate course of treatment. While Dr. Bumgarner clearly had doubts as to whether Plaintiff was embellishing his complaints, Dr. Bumgarner ultimately transferred Plaintiff for additional evaluation at Central Prison. (Id. at ¶ 23). At most, Plaintiff presents a disagreement as to the timeliness of his transfer for evaluation, but the records conclusively show that Wiggins, along with all the other healthcare providers at the Jail, acted in good faith to appropriately respond to Plaintiff's medical needs. This showing, even taken in the light most favorable to Plaintiff, indicates that there is no genuine issue of material fact as to Plaintiff's claim for deliberate indifference against Wiggins.

In sum, Plaintiff has failed to present evidence raising a genuine issue of material fact as to his claim for deliberate indifference to a serious medical need against Wiggins. Therefore,

Wiggins is entitled to summary judgment.[3]

IV.     **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendant Wiggins's motion for summary judgment, (Doc. No. 11), is **GRANTED**, and Plaintiff's action is dismissed with prejudice. Furthermore, for the reasons stated in the body of this Order, Plaintiff's motion for an extension of time to secure legal counsel, (Doc. No. 16), is **DENIED**.

Signed: March 21, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

---

[3] Wiggins also contends that she is entitled to qualified immunity. Because Plaintiff has not raised a genuine issue of material fact as to whether his constitutional rights were violated in the first instance, the Court need not address whether Wiggins is entitled to qualified immunity. See Yacovelli v. Moeser, 324 F. Supp. 2d 760, 765 (M.D.N.C. 2004) ("Because, as previously discussed, no constitutional deprivation has been alleged, the Court need not address whether Defendants are entitled to qualified immunity.").